UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JAMES AUCOIN                              CIVIL ACTION NO. 6:12-cv-02959

VERSUS                                    JUDGE HAIK

B & J, INC., B & J DOCK, LLC.,            MAGISTRATE JUDGE HANNA
AND LWCC

## MEMORANDUM  RULING

Currently pending is the motion for summary judgment, which was filed on behalf of defendant B&J Dock, LLC.  (Rec. Doc. 67).  The motion is opposed.  For the reasons set forth below, the motion is denied.

### BACKGROUND

According to his complaint, James Aucoin was injured in a workplace accident on July 17, 2012.  At that time, Mr. Aucoin was allegedly employed by B&J Dock, LLC and was working on a barge that was owned by B&J, Inc. According to B&J Dock, LLC, the barge was bareboat chartered to B&J Dock, LLC.  The barge was located on Grand Lake in the waters of the state of Louisiana when the accident occurred.  Mr. Aucoin alleges that the barge on which he was working "is a vessel within the definition of the maritime law," and he describes the accident as "a maritime accident."

Mr. Aucoin claims that, during pipe laying operations, a rented air tugger that was welded to the deck of the barge "peeled up" and hit him in the leg, necessitating reconstructive surgery to his knee.  Mr. Aucoin asserted claims against B&J, Inc., B&J Dock, LLC, and LWCC.  The claim against LWCC is premised on the contention that LWCC provided insurance coverage to both B&J, Inc. and B&J Dock, LLC and is, therefore, responsible to the plaintiff in that event that either B&J, Inc. or B&J Dock, LLC is found liable to the plaintiff.

## LAW AND ANALYSIS

In its motion for summary judgment, B&J Dock, LLC seeks to avoid liability to Mr. Aucoin on the basis that it is immune from liability under the exclusivity provisions of the Longshore and Harbor Worker's Compensation Act ("the LHWCA"), 33 U.S.C. § 905(a).  This argument has three predicates:  (a) that B&J Dock, LLC is Mr. Aucoin's employer (b) that B&J Dock, LLC was the owner pro hac vice or bare boat charterer of the vessel on which Mr. Aucoin was allegedly injured; and (c) that Mr. Aucoin did not assert a viable claim for vessel negligence against B&J Dock, LLC.  The Court finds that genuine issues of material fact exist with regard to each of these contentions, precluding summary judgment in B&J Dock, LLC's favor.

## I.   THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable substantive law in the case.[1]  A genuine issue of material fact exists if a reasonable factfinder could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact.[3]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[4]  If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof

---

[1]      *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005).

[2]      *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

[3]      *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[4]      *Washburn v. Harvey*, 504 F.3d at 508.

concerning an essential element of the nonmoving party's claim.[5]  The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim.[6]

## II.   LHWCA EXCLUSIVITY

The Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq*., is a comprehensive statutory scheme designed to compel employers to provide compensation to employees who are injured in the course of their employment.  A primary purpose of the LHWCA is to provide employees with a practical and expeditious remedy for work-related injuries while relieving employers of tort liability for the employees' injuries.  Therefore, the LHWCA generally deprives an employee of his right to pursue tort claims against his employer if he is compensated for injuries covered by the Act.

Under Section 904, a covered worker may receive compensation benefits from his employer without regard to fault.  Under Section 905(a), an employer's liability under Section 904 is "exclusive and in place of all other liability of such employer to the employee. . . ."  Under Section 905(b), however, a worker may pursue a tort action against the owner, charterer, or owner pro hac vice of a vessel for acts of vessel

---

[5]      *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[6]      *Condrey v. Sun Trust Bank of Georgia*, 431 F.3d 191, 197(5th Cir. 2005).

negligence even if the vessel is owned/chartered by his employer.  Thus, "[w]hen an employer acts in a dual capacity as vessel owner, the entity retains its immunity for acts taken in its capacity as an employer, but may still be sued 'qua vessel' for acts of vessel negligence."[7]  The duty owed by a shipowner under § 905(b) in this context "is that established by *Scindia* and its progeny; this duty is neither heightened nor diminished when the longshoreman is employed directly by the vessel."[8]

The three duties established by *Scindia*[9] are referred to as the "Turnover Duty," the "Active-Control Duty," and the "Duty to Intervene."  It has been suggested that the analysis of these three duties in a dual capacity context "can be an elusive quest" and should be applied as the facts allow:

> We agree with the Fifth Circuit, for similar reasons, that the duties of care described in *Scindia* should be applied in dual capacity cases insofar as the facts allow. To do so, a court may have to divide the employer-shipowner into a hypothetical independent employer and independent vessel owner, each separately holding the duties allocated under principles suggested in *Scindia*. A court may sometimes be assisted in this process by the defendant's internal employment arrangements assigning certain personnel to the "vessel" side of its operation. On occasion, however, the duties and work arrangements pertaining to a suing harbor worker may be so foreign to those in

---

[7]        *Levene v. Pintail Enterprises, Inc.*, 943 F.2d 528, 531 (5th Cir. 1991), *Jones & Laughlin Steel Corp. v. Pfeifer* 462 U.S. 523, 531 fn.6 (1983)..

[8]        *Castorina v. Lykes Brothers S.S. Co.,* 758 F.2 1025, 1033 (5th Cir. 1985); *Levene v. Pintail Enterprises, Inc.,* 943 F.2d 533.

[9]        *Scindia Steam Navigation Co. v.De Los Santos,* 451 U.S. 156 (1981).

*Scindia's* stevedoring context that *Scindia's* analysis will become no more than a point of departure. Nonetheless, *Scindia's* general approach, at least, can be followed and, in many cases, some or all of its express analysis may be useable.[10]

Individuals such as operations managers, assistant maintenance managers, and supervisors may, in certain circumstances, be acting as agents of the shipowner such that their knowledge can be imputed to the employer as the shipowner.[11]  On the other hand, the Fifth Circuit has recently instructed:

> Even in the case of dual-capacity vessel owners, the stevedore's knowledge of dangerous conditions that may have arisen during the cargo operations should not be imputed to the shipowner, nor should the shipowner be deemed to know that the stevedore's actions in dealing with such dangers are obviously improvident.  Under *Scindia*, the stevedore—or, in a dual capacity case, the employer in a stevedore capacity—is ordinarily liable for the safety of the workplace and for any injuries that occur.  This principle reflects policy concerns that militate against a functional interpretation of dual-capacity employees' duties that would hinge a vessel owner's LHWCA liability on the duties being performed by the covered employees at any given time.[12]

In this case, Mr. Aucoin expressly claims that he is bringing a Section 905(b) claim,[13] but he does not clearly allege whether he was employed by B&J, Inc. or B&J

---

[10]      *Morehead v. Atkinson-Kiewet, J/V,* 97 F.3d 603, 610 fn.11, 613 (1st Cir. 1996) (en banc).

[11]      *Gay v. Barge 266,* 915 F.2d 1007, 1012-13 (5th Cir. 1990); *Pichoff v. Bisso Towboat Co.* 748 F.2d 300, 302-03 (5th Cir. 1984) (Legislatively superceded on other grounds).

[12]      *Landry v. G.C. Contractors,* 514 Fed. App'x 432,436 (5th Cir. 2013) (quotation marks and internal citations omitted).

[13]      Rec. Doc. 1 at 1, ¶ 1.

Dock, LLC at the time of the accident.[14]  He alleges that the vessel he was on at the time of his injury was owned and operated by either B&J, Inc. or B&J Dock, LLC, and asserts claims against both B&J, Inc. and B&J Dock, LLC in their capacity as the owner of the vessel.[15]  The evidence submitted in support of the motion does not do very much to clear up these ambiguities.

## III.   WHICH ENTITY EMPLOYED MR. AUCOIN AND HIS SUPERVISORS AND WHOSE WORK WAS BEING PERFORMED?

In his complaint, Mr. Aucoin sued both B&J, Inc. and B&J Dock, LLC.  He alleged that, at the time of the accident, he was "working for B&J, Inc."[16]  This statement is ambiguous because it could mean that he was the employee of B&J, Inc. or it could mean that he was doing a job for the benefit of B&J, Inc. as a nominal employee of B&J Dock, LLC.  Mr. Aucoin alleged in his complaint that the barge on which he was injured was owned either by B&J, Inc. or by B&J Dock, LLC.[17]  B&J Dock, LLC contends that B&J, Inc. is a company that owns and operates vessels while B&J Dock, LLC is a construction company that performs both land-based and

---

[14]     Rec. Doc. 1 at 2, ¶ 4.

[15]     Rec. Doc. 1 at 3, ¶¶ 8, 9.

[16]     Rec. Doc. 1 at 2, ¶ 4.

[17]     Rec. Doc. 1 at 2, ¶ 4.

marine projects.[18]  B&J Dock, LLC also contends that B&J, Inc. supplied the vessels for the project that was being performed when Mr. Aucoin was allegedly injured.[19]

In the memorandum supporting its motion for summary judgment, B&J Dock, LLC states, without reference to any affidavit, deposition testimony, or other evidence, that B&J Dock, LLC employed Mr. Aucoin as a roustabout at the time of the accident[20] and that no B&J, Inc. employees were aboard either barge during the pipe-laying activities in which Mr. Aucoin was allegedly injured.[21]  Mr. Aucoin provided evidence that he signed documents agreeing to safety rules for "B & J Corp. or B & J Dock, LLC" and for "B & J, Inc. or B & J Dock, LLC."[22]  He applied for work with "B & J Corporation."[23]  His Form I-9 setting forth his employment eligibility verification for the Department of Homeland Security is signed by Brenda Boudreaux as "co-owner" for "B&J Corp/B&J Dock LLC."[24]  While it is undisputed that LWCC, in its capacity as the workers' compensation insurer for B&J Dock, LLC,

---

[18]     Rec. Doc.. 67-2 at 5.

[19]     Rec. Doc. 67-2 at 5.

[20]     Rec. Doc. 67-2 at 5.

[21]     Rec. Doc. 67-2 at 7.

[22]     Rec. Doc. 77-6.

[23]     Rec. Doc. 77-10.

[24]     Rec. Doc. 77-9.

has paid LHWCA benefits to Mr. Aucoin since the accident, they are not even willing to agree that the plaintiff was employed by B&J Dock, LLC at the time of the accident.

B&J Dock, LLC further alleges that B&J, Inc. contracted with Shoreline to install the flowline that was being laid at the time of the accident but hired B&J Dock, LLC to perform the work.[25]   However, the work tickets that were completed on a daily basis for this particular job are titled "B&J INC. & DOCKS."[26]

Deposition testimony from Nathan Dondis was offered by B&J Dock, LLC, which stated that Mr. Dondis is its safety director and that he was deposed as its 30(b)(6) representative.[27]   However, the deposition excerpts submitted do not establish these facts.  While there is a reference to the deposition being a corporate deposition,[28] to Mr. Dondis having responsibilities with B&J Dock,[29] and to Mr. Dondis having been employed by B&J Dock at some indefinite time,[30] the deposition

---

[25]     Rec. Doc. 67-2 at 5.

[26]     Rec. Doc. 67-11, 77-8.

[27]     See, e.g., Rec. Doc. 67-4 at 5 n. 1 referencing the "deposition testimony of B&J Dock, LLC Safety Director and 30(b)(6) representative Nathan Dondis."

[28]     Rec. Doc. 67-3 at 6.

[29]     Rec. Doc. 67-3 at 7.

[30]     Rec. Doc. 67-3 at 7.

testimony that was submitted does not establish that Mr. Dondis is B&J Dock, LLC's safety director or that his testimony was that of the corporate representative.

The plaintiff submitted an announcement stating that Mr. Dondis was undertaking the role of safety director for both B&J, Inc. and B&J Dock, LLC on April 25, 2011.[31]  There is also e-mail correspondence identifying Mr. Dondis as the business development manager for B&J, Inc. dated September 6, 2012 in which he references a Shoreline well job costing.[32]  There are no contracts or documentary evidence showing that B&J, Inc. let out the work to B&J Dock, LLC.  Finally, B&J Dock, LLC claims that it rented the air tugger that was welded to the deck of the barge TBL-101 on which Mr. Aucoin was injured.  This assertion is belied by the invoice for the equipment which shows the customer to be "B&J Inc." and the contact to be Mr. Dondis.[33]  Thus, it is not clear from the evidence presented through Mr. Dondis's testimony or the other exhibits that B&J, Inc. contracted with Shoreline and then hired B&J Dock, LLC to perform the work.

---

[31]     Rec. Doc. 77-11.

[32]     Rec. Doc. 77-12.

[33]     Rec. Doc. 77-13.

-10-

Similarly, although B&J Dock, LLC states that Randall Matherne was deposed as the 30(b)(6) representative of B&J Dock, LLC,[34] the deposition excerpts presented do not establish that this is the case. The deposition cover page indicates only that Mr. Matherne was deposed in his individual capacity,[35] and the pages from the deposition that were submitted do not identify Mr. Matherne's employer or provide his job title.

Neither Mr. Dondis nor Mr. Matherne testified in the pages submitted that either one of them was employed by B&J Dock, LLC or B&J, Inc., nor does their testimony establish that only B&J Dock, LLC employees were on the barges doing the pipelaying work when the accident occurred. There is a vague reference to "the crew that's doing the work which is B&J Dock people"[36] but there are no affidavits, deposition testimony, or business records produced by the plaintiff or the defendants to definitively establish who Mr. Dondis's or Mr. Matherne's employer was at the time of the accident.

The deposition testimony cited by B&J Dock, LLC does not actually establish that the barge designated as TBL-101 was owned by B&J, Inc. or that it was being

---

[34]     See, e.g., Rec. Doc. 67-4 at 5 n. 1 referencing the "deposition testimony of B&J Dock supervisor and 30(b)(6) representative Randall Matherne."

[35]     Rec. Doc. 67-4 at 1.

[36]     Rec. Doc. 67-4 at 4.

operated by B&J Dock, LLC at the time of the accident.  At oral argument, the plaintiff stipulated that B&J Dock, Inc. owned the barge and that B&J Dock, LLC employed the plaintiff at the time of the accident.  In support of its motion, B&J Dock, LLC refers to itself as the "owner *pro hac vice* of TBL-101"[37] and as the "bareboat charterer" of TBL-101.  However, this is not dispositive of the motion under any of the three duties set forth in *Scindia*.

There is evidence that there were problems with the framing for the deck of the barge in the area where the air tugger was welded that either were not known, thus implicating the turnover duty, or that were actually known by individuals who could be agents for either B&J entity and yet no individuals from either B&J entity intervened.  There is no clear basis to discern who maintained "active control" of this barge given the discrepancies in employment status.  It is contested as to what actually caused the accident, weld failure or the condition of the barge. Finally, it is impossible to discern from the testimony and evidence submitted on whose behalf certain individuals who could be agents for either B&J Dock, LLC or B&J, Inc., Mr. Nathan Dondis and Mr. Randall Matherne, were acting during this entire operation on the record presented."[38]

---

[37]     Rec. Doc. 67-2 at 10.

[38]     Rec. Doc. 67-2 at 17.

## CONCLUSION

B&J Dock, LLC argues that the plaintiff has not asserted a viable claim against B&J Dock, LLC because the plaintiff has asserted only a claim against B&J Dock, LLC in its capacity as the plaintiff's employer, which is precluded by the LHWCA, and has not asserted a valid claim against B&J Dock, LLC in its capacity as vessel owner.  As a threshold matter, however, B&J Dock, LLC has not established which B&J entity employed which individuals at the time of the accident.  Consequently, the Court cannot determine whether a viable Section 905(b) claim has – or has not – been asserted against B&J Dock, LLC.

Finding that there are genuine issues of material fact remaining to be resolved with regard to exclusivity, immunity, and applicability of Section 905(b) in this action, IT IS ORDERED that B&J Dock, LLC's motion for summary judgment (Rec. Doc. 67) is DENIED.

Signed at Lafayette, Louisiana on December 20, 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE