UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JAMES AUCOIN | CIVIL ACTION NO. 6:12-cv-02959 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| B & J, INC., B & J DOCK, LLC., AND LWCC | BY CONSENT OF THE PARTIES |

### MEMORANDUM RULING

Currently pending is the motion for summary judgment, which was filed on behalf of defendant B&J, Inc. (Rec. Doc. 68). The motion is opposed. For the reasons set forth below, the motion is denied.

#### BACKGROUND

According to his complaint, James Aucoin was injured in a workplace accident on July 17, 2012. At that time, Mr. Aucoin was allegedly employed by B&J Dock, LLC and was working on a barge that was owned by B&J, Inc. According to B&J Dock, LLC, the barge was bareboat chartered to B&J Dock, LLC. The barge was located on Grand Lake in the waters of the state of Louisiana when the accident occurred. Mr. Aucoin alleges that the barge on which he was working "is a vessel within the definition of the maritime law," and he describes the accident as "a maritime accident."

Mr. Aucoin claims that, during pipe laying operations, a rented air tugger that was welded to the deck of the barge "peeled up" and hit him in the leg, necessitating reconstructive surgery to his knee. Mr. Aucoin asserted claims against B&J, Inc., B&J Dock, LLC, and LWCC. The claim against LWCC is premised on the contention that LWCC provided insurance coverage to both B&J, Inc. and B&J Dock, LLC and is, therefore, responsible to the plaintiff in that event that either B&J, Inc. or B&J Dock, LLC is found liable to the plaintiff.

## LAW AND ANALYSIS

In its motion for summary judgment, B&J, Inc. seeks to avoid liability to Mr. Aucoin on the basis that it owned the vessel on which Mr. Aucoin was working at the time of his alleged injury but did not violate any of the duties owed by a vessel owner under §905(b) of the Longshore and Harbor Worker's Compensation Act ("the LHWCA"), 33 U.S.C. § 901 *et seq*. The plaintiff does not contest that B&J, Inc. owned the barge designated as TBL-101, which is the vessel on which Mr. Aucoin was allegedly injured. However, even if B&J, Inc. did own the vessel, genuine issues of material fact preclude a finding that B&J, Inc. not violate its *Scindia* duties.[1]

**I.   THE SUMMARY JUDGMENT STANDARD**

---

[1] *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156 (1981).

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable substantive law in the case.[2] A genuine issue of material fact exists if a reasonable factfinder could render a verdict for the nonmoving party.[3]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact.[4] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[5] If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005).

[3] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

[4] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5] *Washburn v. Harvey*, 504 F.3d at 508.

concerning an essential element of the nonmoving party's claim.[6] The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim.[7]

## II. THE DUTIES OWED UNDER §905(B) OF THE LHWCA

Under §905(b) of the LHWCA, a maritime employee may bring an action against a vessel if he is injured due to the negligence of the vessel. The United States Supreme Court defined the duty of care owed by a vessel owner under the LHWCA,[8] and the Fifth Circuit has noted that "[i]t is now well accepted that shipowners owe three narrow duties to longshoremen: (1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene."[9]

## III. B&J, INC. HAS NOT PROVEN THAT IT NOT VIOLATE A DUTY OWED TO MR. AUCOIN

B&J, Inc. argues that the opinion of the plaintiff's expert witness, Dr. Tom Shelton, establishes that Mr. Aucoin's accident was solely caused by the negligence

---

[6] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[7] *Condrey v. Sun Trust Bank of Georgia*, 431 F.3d 191, 197(5th Cir. 2005).

[8] *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981).

[9] *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 39-92 (5th Cir. 2008). See, also, *Moore v. M/V ANGELA*, 353 F.3d 376, 380 (5th Cir. 2003); *Fontenot v. U.S.*, 89 F.3d 205, 206-07 (5th Cir. 1996); *Levene v. Pintail Enterprises, Inc.*, 943 F.2d 528, 533 (5th Cir. 1991).

of B&J Dock, LLC in conducting the pipelaying operation and that the accident was not caused by the negligence of the vessel itself.

In support of this argument, B&J, Inc. asserts, first, that although B&J, Inc. contracted with Shoreline to install a flowline in Grand Lake, B&J, Inc. contracted that work out to B&J Dock, LLC.[10] No evidence was submitted that establishes either a contract between B&J, Inc. and Shoreline or an agreement between B&J, Inc. and B&J Dock, LLC with regard to the performance of that work. Although B&J, Inc. cites to the depositions of Nathan Dondis and Randall Matherne to support this contention, the deposition excerpts submitted do not establish these alleged facts.

Nathan Dondis was identified by B&J Dock, LLC as its safety director and that he was deposed as its 30(b)(6) representative.[11] However, the deposition excerpts submitted do not establish these facts. Similarly, B&J Dock, LLC states that Randall Matherne was deposed as the 30(b)(6) representative of B&J Dock, LLC.[12] However, the deposition excerpts presented do not establish that this is the case. The deposition cover page indicates only that Mr. Matherne was deposed in his individual capacity,[13]

---

[10] Rec. Doc. 68-2 at 5.

[11] See, e.g., Rec. Doc. 67-4 at 5 n. 1 referencing the "deposition testimony of B&J Dock, LLC Safety Director and 30(b)(6) representative Nathan Dondis."

[12] See, e.g., Rec. Doc. 67-4 at 5 n. 1 referencing the "deposition testimony of B&J Dock supervisor and 30(b)(6) representative Randall Matherne."

[13] Rec. Doc. 67-4 at 1.

and the pages from the deposition that were submitted do not identify Mr. Matherne's employer or provide his job title.

The plaintiff submitted an announcement stating that Mr. Dondis was undertaking the role of safety director for both B&J, Inc. and B&J Dock, LLC on April 25, 2011.[14] There is also e-mail correspondence identifying Mr. Dondis as the business development manager for B&J, Inc. dated September 6, 2012 in which he references a Shoreline well job costing.[15] The work tickets that were completed on a daily basis for this particular job are titled "B&J INC. & DOCKS."[16] B&J Dock, LLC claims that it rented the air tugger that was welded to the deck of the barge TBL-101 on which Mr. Aucoin was injured. This assertion is belied by the invoice for the equipment which shows the customer to be "B&J Inc." and the contact to be Mr. Dondis.[17] There are no contracts, documentary evidence or testimony that has been submitted which shows that B&J, Inc. let out the work to B&J Dock, LLC. Thus, it is not clear that B&J, Inc. contracted with Shoreline and then hired B&J Dock, LLC to perform the work.

---

[14]     Rec. Doc. 77-11.

[15]     Rec. Doc. 77-12.

[16]     Rec. Doc. 67-11, 77-8.

[17]     Rec. Doc. 77-13.

Second, B&J, Inc. contends that it did not have any employees aboard the pipelaying barges.[18] Neither Mr. Dondis nor Mr. Matherne testified in the pages submitted that either one of them was employed by B&J Dock, LLC or B&J, Inc., nor does their testimony establish that only B&J Dock, LLC employees were on the barges doing the pipelaying work when the accident occurred. There is a vague reference to "the crew that's doing the work which is B&J Dock people"[19] but there are no affidavits, deposition testimony, or business records produced by the plaintiff or the defendants to definitively establish who employed Mr. Dondis, Mr. Matherne or the other individuals involved in the critical aspects of this operation at the time of the accident.

Third, B&J, Inc. contends that B&J Dock, LLC was responsible for procuring all of the equipment needed to perform the pipelaying job.[20] B&J, Inc. cites certain deposition testimony from Mr. Dondis in support of this contention. Again, however, the cited testimony does not actually support that contention. Mr. Dondis actually testified that once it was decided that "B&J" – without specifying whether it was B&J, Inc. or B&J Dock, LLC – was going to do the work, he personally procured the

---

[18] Rec. Doc. 68-2 at 5.

[19] Rec. Doc. 67-4 at 4.

[20] Rec. Doc. 68-2 at 6.

materials and equipment to use on the job.[21] But it is not clear from the evidence provided that Mr. Dondis was employed solely by B&J Dock, LLC. The plaintiff submitted an announcement stating that Mr. Dondis was undertaking the role of safety director for both B&J, Inc. and B&J Dock, LLC on April 25, 2011[22] as well as e-mail correspondence identifying Mr. Dondis as the business development manager for B&J Inc. on September 6, 2012.[23] This raises a question as to whether Mr. Dondis procured equipment on behalf of B&J Dock, LLC or on behalf of B&J, Inc. with regard to this particular pipelaying job.

The turnover duty "places two responsibilities on the vessel owner. First, the owner owes a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety. Second, the owner owes a duty to warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it; however, the duty to warn of hidden dangers is

---

[21] Rec. Doc. 68-3 at 3.

[22] Rec. Doc. 77-11.

[23] Rec. Doc. 77-12.

narrow. It does not include dangers which are either: (1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering."[24]

B&J, Inc. focuses on certain conclusions reached by one of the plaintiff's experts as to the cause of the accident being related to spooling the cable from the top of the air tugger rather than from the bottom, concluding that "Shelton's opinion makes clear that the cause for the weld failure was the way B&J Dock set up and operated the air tugger."[25] This ignores testimony from witnesses that the deck of the barge was in poor condition. There is evidence that there were problems with the framing for the deck of the barge in the area where the air tugger was welded that either were not known to the plaintiff, or that were actually known by individuals who could be agents for either B&J entity and yet there is no evidence individuals from B&J, Inc. warned the plaintiff of the condition. This fact is particularly material since it is unknown who actually employed the safety director or supervisors. Since it is contested as to what actually caused the accident, weld failure, operational error or the condition of the barge, there are genuine issues of material fact precluding entry of summary judgment in B&J, Inc.'s favor with regard to the turnover duty.

---

[24] *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 392 (5th Cir. 2008) (internal citations omitted).

[25] Rec. Doc. 68-2 at 11.

The second duty owed by a vessel owner is the active control duty. A shipowner must exercise reasonable care to prevent injuries in areas that remain under the active control of the vessel.[26] Therefore, even when the vessel owner no longer retains the primary responsibility for safety in a work area turned over to an independent contractor, the vessel owner's responsibility does not end with regard to areas or equipment over which the vessel's crew retains operational control.[27] In this case, B&J, Inc. contends that control of the vessel was turned over to B&J Dock, LLC but it is impossible to discern from the testimony and evidence submitted on whose behalf certain individuals were acting during this entire operation on the record presented."[28] There simply is no clear basis to discern who maintained "active control" of this barge given the discrepancies in employment status. Therefore, the Court is unable to determine whether B&J, Inc. retained active control over some aspects of the vessel or the job. B&J, Inc. is not entitled to summary judgment in its favor with regard to the active control duty.

The vessel owner's duty to intervene is triggered when the vessel owner has actual knowledge that a dangerous condition exists and actual knowledge that the

---

[26] *Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 34 (5th Cir. 1997).

[27] *Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d at 34.

[28] Rec. Doc. 67-2 at 17.

stevedore is not acting to protect the longshoreman.[29]  A six-factor test is used to guide the determination whether the vessel owner has a duty to intervene:  (1) whether the danger was open and obvious, (2) whether the danger was located in the ship or ship's gear; (3) which party created the danger or used the defective item and was therefore in a better position to correct it; (4) which party owned and controlled the defective item; (5) whether an affirmative act of negligence or acquiescence in the use of a dangerous item occurred; and (6) whether the shipowner assumed any duty with regard to the dangerous item.[30]

B&J, Inc. argues that it could not have violated this duty because it did not have any employees on the barges involved in the pipelaying project.  As noted above, however, B&J, Inc. has not proven that to be true.  Similarly, B&J, Inc. has not proven that the vessels were turned over to B&J Dock, LLC or that B&J Dock, LLC was solely responsible for carrying out the pipelaying operation.  Accordingly, B&J, Inc. has not proven that it is entitled to summary judgment in its favor with regard to this duty.

---

[29]     *Fontenot v. U.S.*, 89 F.3d 205, 209 (5th Cir. 1996).

[30]     *Fontenot v. U.S.*, 89 F.3d at 209.

## CONCLUSION

B&J, Inc. argues that it did not violate any duty it owed to Mr. Aucoin as the owner of the vessel on which he was injured. However, genuine issues of fact exist as to whether the vessel was turned over to B&J Dock, LLC for the pipelaying operation, or whether B& J, Inc. had no employees on the site when the accident occurred. Furthermore, B&J, Inc. seeks to rely on a portion of one expert witness's report while ignoring all other evidence concerning the cause of the accident. Finding that there are genuine issues of material fact that preclude the entry of summary judgment in B&J, Inc.'s favor,

IT IS ORDERED that B&J, Inc.'s motion for summary judgment (Rec. Doc. 68) is DENIED.

Signed at Lafayette, Louisiana on December 23, 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE